PEOPLE v. DAVIS.

1. CRIMINAL LAW—WARRANT—SWORN COMPLAINT—JURISDICTION OF MAGISTRATE.

Positive statements as to commission of crime, contained in sworn complaint and purporting to be made upon the knowledge of the affiant, gives the magistrate jurisdiction to issue warrant, the fact that it does not appear that there was no examination of witnesses under oath or that the complainant had not adhered to the truth being insufficient to avoid the warrant and, once issued, the warrant could not later be impeached for lack of knowledge of complaining witness.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur, Criminal Law § 215.
[2, 3, 5] 14 Am Jur, Criminal Law § 246.
[4] 14 Am Jur, Criminal Law § 240 et seq.
[6] 14 Am Jur, Criminal Law § 248.
[7] 53 Am Jur, Trial § 457.
[7] Reference by counsel for prosecution in opening statement to matters which he does not later attempt to prove as ground for new trial, reversal, or modification. 28 ALR2d 972.
[8] 53 Am Jur, Trial § 455.
[9–12] 27 Am Jur, Indictment or Information §§ 43, 46, 188.
[13] 53 Am Jur, Trial § 133.
[14–16] 26 Am Jur, Homicide §§ 323, 351 et seq.
[17] 20 Am Jur, Evidence §§ 728, 729; 26 Am Jur, Homicide § 449.
[18, 19] 58 Am Jur, Witnesses § 726.
[20] 20 Am Jur, Evidence § 755 et seq.; 26 Am Jur, Homicide § 450.
[21] 58 Am Jur, Witnesses § 558.
[22] 20 Am Jur, Evidence § 762.
[22] Physiological or psychological truth and deception tests. 23 ALR2d 1306.

2. SAME—PRELIMINARY EXAMINATION—EVIDENCE—PROBABLE CAUSE.
   Evidence produced at a preliminary examination of one charged
   with crime need only show there is probable cause that accused
   committed the crime, as it is not required that the guilt of
   defendant be established beyond a reasonable doubt (CL
   1948, § 766.13).

3. SAME—PRELIMINARY EXAMINATION—PROBABLE CAUSE—DISCRE-
   TION OF EXAMINING MAGISTRATE.
   An appellate court cannot substitute its judgment for that of an
   examining magistrate for his determination of probable cause
   that a crime was committed, unless there has been a clear abuse
   of his discretion (CL 1948, § 766.13).

4. SAME—HOMICIDE—DEGREE OF MURDER—ORDER BINDING OVER FOR
   TRIAL.
   The order binding over for trial one accused under a complaint
   charging that he did feloniously, wilfully and with malice afore-
   thought kill and murder need not specify whether it was first-
   or second-degree murder.

5. SAME—PRELIMINARY EXAMINATION—PROBABLE CAUSE—EVIDENCE.
   Finding of probable cause, made by magistrate who bound de-
   fendant over for trial on charge of murdering his wife held,
   supported by evidence regarding his previous disposition
   toward her as well as the medical testimony and physical facts,
   the circumstantial and inferential evidence offered by the
   prosecution being weighed against defendant's denials to the
   investigating officers (CL 1948, § 766.13).

6. SAME—ISSUER OF WARRANT AND EXAMINING MAGISTRATE NEED
   NOT BE SAME MAGISTRATE.
   It is not essential to the validity of the return giving circuit
   court jurisdiction that the same magistrate who held the
   preliminary examination of one accused of crime be the same
   judge who issued the warrant, where there is more than 1
   judge in the magistrate's court (CL 1948; § 774.47).

7. SAME—OPENING STATEMENT—UNSUBSTANTIATED REMARKS OF
   PROSECUTOR—BAD FAITH—PREJUDICE.
   Unsubstantiated remarks by prosecuting attorney in his opening
   statement do not require reversal in the absence of a showing
   of bad faith on the part of the prosecutor or prejudice to the
   defendant.

8. SAME—HOMICIDE—PROSECUTOR'S OPENING STATEMENT—REFER-
   ENCES TO PREVIOUS ASSAULTS.
   It was not reversible error for prosecuting attorney, in making

his opening statement in prosecution for homicide, to refer to certain prior assaults by the accused upon his wife and then referred to defendant as "a man of violence," where evidence of the various prior assaults was admissible as bearing upon defendant's intent in committing the crime, and notwithstanding it put his character in issue before testimony was offered as to his good character or reputation.

9. INDICTMENT AND INFORMATION—INDORSEMENT OF NAMES OF WITNESSES.

The names of witnesses who were not *res gestae* witnesses did not need to be indorsed on the information under circumstances shown (CL 1948, § 767.40).

10. SAME—INDORSEMENT OF NAMES OF WITNESSES AT TRIAL—CONTINUANCE—INTERVIEW.

The indorsement of witnesses after commencement of trial without granting the continuance sought by defendant did not constitute an abuse of discretion, where the witnesses were not *res gestae* witnesses, opportunity to interview the witnesses was given defendant, they did not testify until the second day after indorsement and trial court thereafter reluctantly granted a continuance to defendant over a week end in order to enable him to get certain out-of-town witnesses who did not testify (CL 1948, § 767.40).

11. SAME—FAILURE TO INDORSE NAMES OF WITNESSES—BURDEN OF SHOWING EXCUSE—DISCRETION OF COURT.

The prosecution has the burden of showing excuse for failure to sooner indorse the names of witnesses, where permission is not sought until the trial is imminent or in progress, the ultimate question on review being whether or not the trial court abused its discretion and the burden of so showing being on the party asserting abuse (CL 1948, § 767.40).

12. SAME—INDORSEMENT OF NAMES OF WITNESSES—PURPOSE OF REQUIREMENT.

The purpose of the rule requiring that the names of witnesses who are to testify and the names of all *res gestae* witnesses be indorsed on the information is to protect an accused against the suppression of testimony favorable to him and to protect him against a false accusation (CL 1948, § 767.40).

13. CRIMINAL LAW—OBJECTION TO TESTIMONY BY ONE COUNSEL ONLY.

It was not an abuse of discretion for trial court to direct that only 1 of defendant's 2 counsel make objections to testimony presented by the prosecution, where upon 3 different occasions both counsel for him made certain objections almost simultaneously (Court Rule No 37 [1945]).

14. SAME—HOMICIDE—INTENT—EVIDENCE OF LACK OF ACCIDENT.

Testimony of various assaults by defendant upon his wife, including one wherein he tried to ram his own house trailer with his car as well as run down his wife was properly admitted in his trial on charge of murdering his wife by running her down following her departure from their car after a quarrel in order to show "motive, intent, the absence of, mistake or accident" on defendant's part, since the prior alleged assaults and intent therein involved bore sufficient resemblance to the crime charged to be relevant and admissible (CL 1948, § 768.27).

15. SAME—INTENT—EVIDENCE OF OTHER LIKE OFFENSES.

It is competent in proving intent to take testimony disclosing other like offenses committed by the accused (CL 1948, § 768.27).

16. SAME—MURDER—INTENT—EVIDENCE OF OTHER SIMILAR OFFENSES —INSTRUCTIONS.

Testimony of prior similar acts of assault are admissible in prosecution for murder on matter of intent only if jury is first convinced that they had been perpetrated by the accused and jury is instructed clearly on such matter and matter of credibility (CL 1948, § 768.27).

17. HOMICIDE—EVIDENCE—PHOTOGRAPH.

Use of photograph of defendant's wife, taken after he is claimed to have bit off part of her nose, in such a way as to produce a temporary emotional reaction on part of a witness in prosecution of defendant for the subsequent murder of his wife *held,* not to have amounted to reversible error under the circumstances, even though not formally introduced in evidence, where evidence of the assault was admissible and the witnesses who did see the picture both testified as to the bloody condition of the deceased following the alleged assault.

18. WITNESSES—CROSS-EXAMINATION—CREDIBILITY—DISCRETION OF COURT.

While it is permissible to discredit a witness upon cross-examination by showing a lack of morality, the extent to which such examination should be permitted is a matter of discretion with the trial judge with which the Supreme Court will not interfere unless there is a clear abuse of discretion.

19. SAME—CROSS-EXAMINATION ON CREDIBILITY—DISCRETION OF COURT.

It was not reversible error for trial court to sustain various objections by the prosecution to cross-examination of sister

of deceased wife of defendant, charged with having murdered his wife, whereby defendant's counsel sought to discredit her by showing her to have been the woman responsible for having broken up the marriage of another of the prosecution's witnesses.

20. HOMICIDE—EVIDENCE—EXPERIMENTS WITH CAR USED IN HOMICIDE.

Ruling of trial court admitting in evidence the testimony of 4 police officers who had tested the brakes and steering mechanism of automobile with which defendant had killed his wife and which officers found to be in good working order was within discretion of trial court to admit evidence of experiments and not reversible error, where it related to an ascertainment of turning radii at various speeds, matters pertinent to diagram of course car had taken during the crime and to defendant's story that the wheel of the car had been "cramped".

21. CRIMINAL LAW—CREDIBILITY OF DEFENDANT—EXAMINATION BY COURT—UNRESPONSIVE ANSWERS.

It was not reversible error for trial court to state to defendant that the prosecutor was not trying to confuse defendant as he had claimed after giving unsatisfactory or unresponsive answers to the same question a number of times on his cross-examination, where the court re-asked the question and a responsive answer was given and the performance was repeated as to a subsequent question, as the court did not thereby usurp the jury's function of determining credibility but merely made an effort to obtain responsive answers to fair questions.

22. EVIDENCE—POLYGRAPH TESTS.

It was not error to refuse to admit the results of a polygraph or lie-detector test in prosecution for murder in view of the fact that it is not yet established that reasonable certainty follows from such tests.

Appeal from Genesee; Roth (Stephen J.), J. Submitted June 16, 1955. (Docket No. 65, Calendar No. 46,033.) Decided October 3, 1955. Rehearing denied December 1, 1955.

Thomas Arlan Davis was convicted of murder in the second degree. Affirmed.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Jerome F. O'Rourke,* Prosecuting Attorney, and *John F. Young,* Assistant Prosecuting Attorney, for the people.

*D. Bruce Wistrand,* for defendant.

BUTZEL, J.   Thomas Arlan Davis appeals from his conviction of the crime of murder, second degree.   He was charged with murdering Ramona Juanita Davis, his wife.   About 10 o'clock in the evening of August 9, 1952, defendant and his wife were driving north on Root street in the city of Flint.   They had been quarreling apparently over whether or not he should drive her to Muskegon that night.   While both had been drinking previously, there is no claim that defendant was intoxicated. As they approached the intersection of Root street with Louisa street, which runs east and west, they stopped the car and defendant's wife alighted from the car and started walking diagonally across the intersection of the sidewalks at the southeasterly intersection of the 2 streets, and apparently continued walking east on the south sidewalk of Louisa street.   Witnesses heard the 2 arguing as she was leaving the car.   It appears from the skid marks on the pavement that the car lurched forward on Root street, skidded around the corner to the right or east on Louisa street, turned to the south· and ran across the sidewalk into the yard, demolished part of the back porch of the corner house facing Root street, and then continuing on in a circle turned north again and ran back over the sidewalk and finally came to rest on the north side of Louisa street.   The body of the wife was found not far from the back porch.   She died soon thereafter principally as a result of crushed vital organs.   The prosecution claims that it was a deliberate murder.

Defendant claims that it was an accident. He was very unfortunate in that he had lost his left leg and injured his left arm as the result of a motorcycle accident so that his freedom of movement on this occasion was very much restricted. He maintained that when his wife left the car she "cramped" the steering wheel and that he accidentally pressed upon the accelerator and the car swerved out of control. Specific details about the crime as well as other evidence and testimony introduced in the course of the trial will be referred to in our discussion of the errors claimed. There was undoubtedly sufficient testimony to justify the jury in its conclusion that defendant purposely and not accidentally caused his wife's death. We allowed an appeal from the conviction and the court's refusal to grant defendant's motion for new trial. In a very complete and well prepared brief, defendant's counsel have raised a large number of claims of error that require discussion and a lengthy opinion.

Defendant attacks the original jurisdiction of the court on the ground that the municipal judge to whom the complaint was made did not make a finding of probable cause supported by oath or affirmation prior to issuing the warrant. A detective of the Flint police department presented the complaint and warrant to the municipal judge. The officer testified that the judge took no testimony but that he, the officer

"submitted the papers for the court's information so he might see what the charge was. He asked me to swear to it, I did, and he signed it, and he was arraigned."

Defendant argues in effect that the examination of witnesses or the taking of oral testimony is indispensable to the issuance of a complaint and warrant. This argument is adequately answered by the case

of *People* v. *Mosley,* 338 Mich 559, 564, where a similar contention was made, and denied in the following language:

"This Court in *People* v. *Lynch,* 29 Mich 274; *Potter* v. *Barry Circuit Judge,* 156 Mich 183; and *People* v. *Czckay,* 218 Mich 660, settled the question that a complaint which, upon its face, purports to be made upon the knowledge of the affiant, is a sufficient compliance with the statute, and that it is incompetent for a defendant, upon arraignment, to impeach the complaint by showing a lack of knowledge by the complaining witness. The positive statements made upon the oath of the complainant gives the magistrate jurisdiction to issue the warrant. The fact that 'it does not appear there was no examination of witnesses under oath,' or that the complainant did not adhere to the truth, cannot avoid a warrant. *People* v. *Hare,* 57 Mich 505, and *People* v. *Schottey,* 66 Mich 708. Jurisdiction having attached for the issuance of the warrant, it could not be later impeached. *Potter* v. *Barry Circuit Judge, supra.*"

Defendant next claims that there was not sufficient evidence produced at the preliminary examination to bind him over on a charge of first-degree murder. The statute, CL 1948, § 766.13 (Stat Ann 1954 Rev § 28.931), requires a finding of probable cause. It is not required that the guilt of a defendant be established beyond a reasonable doubt. *People* v. *Asta,* 337 Mich 590. While we may not agree with the findings of the magistrate, we cannot substitute our judgment for his determination of probable cause unless there has been a clear abuse of his discretion. *People* v. *Dellabonda,* 265 Mich 486; *People* v. *Karcher,* 322 Mich 158. Where a complaint charges that an accused feloniously, wilfully and of malice aforethought did kill and murder, the certification to the circuit court need not specify whether

it was first- or second-degree murder. *Cargen* v. *People*, 39 Mich 549. The evidence regarding defendant's previous disposition toward his wife as well as the medical testimony and the physical facts themselves were sufficient to uphold a finding of probable cause. The circumstantial and inferential evidence offered by the prosecution weighed against defendant's denials to the investigating officers and support the finding made.

The complaint was received and the warrant thereafter issued by Flint municipal Judge John W. Baker. The return after preliminary examination is signed by municipal Judge Dale C. Showley before whom the preliminary examination took place. Defendant contends that the return is void and failed to give the circuit court jurisdiction because of ambiguous references apparently to another judge and because the statute requires the judge who issued the warrant to sit at the preliminary examination. There were 2 judges of the Flint municipal court who sat on this case in its preliminary stages. The judge who issued the warrant was called away and the other judge conducted the examination. The statute, CL 1948, § 774.47 (Stat Ann 1954 Rev § 28.1237[2]), provides:

"In any city having more than 1 justice of the peace, or other judicial officer having the criminal jurisdiction of a justice of the peace, whenever a warrant shall be issued for the arrest of any person charged with any offense against the laws of the State, or for the violation of a city ordinance, *any justice* or *other judicial officer of said city shall have jurisdiction to* arraign, set bail, adjourn, try, take testimony in, *conduct a preliminary examination,* dismiss, *hold for trial in circuit court,* and to do any act or acts in connection with the trial and disposition of any such case brought before any such justices of the peace." (Emphasis added.)

This effectively disposes of defendant's contention.

In his opening statement the prosecutor said, *inter alia,* that he would show the jury certain prior assaults by the accused upon his wife and further stated that:

"We will show you, members of the jury, that this was not an accident; that the defendant in this cause, Mr. Davis, is a man of violence."

Defendant cites this as error, asking:

"May the prosecutor in his opening statement to the jury describe several prior unrelated, unconnected, alleged assaults by defendant on deceased and then characterize and call him a man of violence?"

He argues that the effect of the prosecutor's statement was to put his character in issue before there was first offered testimony as to his good character or reputation. The effect of the statement was not to put defendant's character at issue except as may have been done inferentially from evidence of prior assaults by him upon his wife. As will appear in the course of this opinion the evidence of these assaults was admissible as bearing upon defendant's intent in committing the crime of which he was charged. It is the rule that where in an opening statement the prosecutor makes statements which may not be substantiated at the trial by the evidence, we will not reverse for that fact alone in the absence of a showing of bad faith on the part of the prosecutor or prejudice to the defendant. *People* v. *Ryckman,* 307 Mich 631, and cases cited therein. Defendant has made no such showing, nor does any appear from the record. He specifically cites *People* v. *Wheaton,* 207 Mich 173. There the prosecutor, in his opening statement, referred to previous of-

fenses committed by the accused and on trial introduced evidence to substantiate the statement. The instructions to the jury did not limit consideration of such as bearing only upon defendant's credibility. We reversed mainly because we considered the evidence of previous offenses inadmissible in that case. However, in the instant case, it will appear that such evidence was specifically admissible to show intent. Therefore, no error was committed.

On Monday, January 12, 1953, the day previous to that on which the case was set for trial, the prosecutor moved that 3 additional names be indorsed on the information. Two of the persons were police officers from Muskegon who the prosecutor stated would testify as to defendant's arrest record and might be called as rebuttal witnesses. The third person was a Mr. Pesch, also of Muskegon, who would testify as to 1 of the altercations between the defendant and the deceased. The prosecutor said that he received information the previous Saturday concerning these witnesses from a Lt. Jones of the Flint police department. Counsel for defendant objected and asked for a continuance to enable them to go to Muskegon to interview the witnesses. The judge refused to grant it but allowed the name of Mr. Pesch to be indorsed. The following day, Tuesday, January 13, 1955, after his opening statement, the prosecutor moved as follows:

"If the Court please, I would like to at this time move the following names be indorsed on the information. Those 4 names are as follows: Sgt. Stuart Calkins, C-a-l-k-i-n-s, Edward Beagle, Albert Resterhouse, R-e-s-t-e-r-h-o-u-s-e, and Mary Geneaux, G-e-n-e-a-u-x. None of these witnesses is a *res gestae* witness. Last Saturday I brought it to the attention of Mr. Wistrand that I would move to have the names of Sgt. Calkins and Officer Beagle indorsed on the information. No stenographer was

available at that time. I had learned from Officer Frank Jones that morning the name of 1 of those officers, and I had learned the previous evening, the Friday evening, the name of the other officer. Officer Jones came over here and gave these 2 names to me. Judge Elliott, at my motion indorsed the name of 1. That name already appearing on the information, and informed me, and it so appears in the record, that a motion as to the other 2 would be decided by the judge that handled the case.

"Albert Resterhouse and Mary Geneaux are 2 witnesses whose names came to my attention this noon. Both of them are residents of Muskegon. Mary Geneaux is the sister of the deceased.

"Now, going back to these 4, the first one again, Sgt. Calkins, is a sergeant of the city police department of Muskegon, and will testify, if so permitted, as to the arrest record of the defendant. Edward Beagle is an officer with the township police of the township of Muskegon, and will testify as to 1 of the violent acts which occurred between the deceased and her husband. The other 2 were both present on different and sundry occasions, and witnessed various types of assaults and threats made by the defendant against the deceased. I might state that all 4 of these will be present in court in the morning, and I offer them to defense counsel to interrogate at their leisure. I have no intention of offering them until at least late tomorrow afternoon, should the court permit me to have them indorsed on the information."

Insofar as the 2 officers are concerned this motion was just a renewal of that made the previous day. Counsel again objected to the indorsement of the additional witnesses, also residents of Muskegon, unless they were granted continuance to interview them. The prosecutor again offered the same reason that the officer originally in charge had retired but recently came back to take charge of the case. The court's ruling appears as follows:

"Well, I will permit the indorsement of Officer Calkins, if you desire the indorsement of the other witnesses, then I am constrained to grant 2 days continuance the defense have asked for. Now, if you think it is that important to your case, then I see no way around a continuance.

"*Mr. Wright* (prosecutor): Can we do this, your honor,—proceed with the testimony today, and before the day is over, before the jury are excused, let me decide that?

"*The Court:* There is no objection to that."

Later the same day the court permitted the indorsement of the other witnesses on the premise that they would not be called until the end of the prosecution's case or on rebuttal. The court stated:

"In fairness to both sides, therefore, I think we will proceed with the trial tomorrow morning, and you will make available, as I have outlined, for the benefit of the defense, these additional witnesses. Then perhaps after their interviewing, they may be in a better position to judge whether they may want later in the trial a continuance for the purpose of perhaps going to Muskegon to make further investigation."

The witnesses who were indorsed all testified on Thursday, January 15, 1953, as part of the prosecution's case. On Friday and Saturday, defense counsel sought a continuance until the following Monday because of certain out-of-town witnesses they wished to have testify. The court, initially disposed not to grant the request, adjourned the case until Monday. It does not appear in the record that any of these particular witnesses testified. The trial was concluded by a verdict of guilty of murder in the second degree on Monday, January 19, 1953. Defendant argues that the court was in error in permitting the indorsement of the witnesses after

the trial began and in refusing the request for a 2-day continuance as a condition thereof.

The statute regarding indorsement of witnesses, CL 1948, § 767.40 (Stat Ann 1954 Rev § 28.980), provides:

"All informations shall be filed during term in the court having jurisdiction of the offense specified therein, after the proper return is filed by the examining magistrate by the prosecuting attorney of the county as informant; he shall subscribe his name thereto, and indorse thereon the names of the witnesses known to him at the time of filing the same. *Names of other witnesses may be indorsed before or during the trial by leave of the court and upon such conditions as the court shall determine."* (Emphasis added.)

Witnesses need not be indorsed on the information if they are not *res gestae* witnesses. *People* v. *Kayne,* 268 Mich 186; *People* v. *Hawthorne,* 293 Mich 15; *People* v. *Schultz,* 316 Mich 106. The witnesses in this case were not *res gestae* witnesses. In *People* v. *Blue,* 255 Mich 675, 678, the Court said:

"Where the trial is imminent or in progress, the prosecution has the burden of a showing of excuse for failure to sooner indorse. If the showing is sufficient *prima facie,* the defendant then has the burden of a showing in opposition to the indorsement or for continuance, which may be attacked by further showing of the prosecution. The ultimate question, on review, is whether the court abused its discretion, with the burden ordinarily on the party asserting abuse."

The purpose of the rule is to protect the accused against the suppression of testimony favorable to him and to protect him against a false accusation. *People* v. *Tann,* 326 Mich 361. While not given the requested continuance counsel were afforded an opportunity to interview the witnesses. In fact, they

went to Muskegon to interview Pesch, as soon as he was indorsed, on the Monday preceding the Thursday on which he testified. One of the errors strongly urged by defendant is the failure of the court to allow him to cross-examine a witness regarding her past relationship with Mr. Pesch, as well as other impeaching facts. We must assume a familiarity with these facts on the part of counsel in wanting to so cross-examine. The record further shows that counsel for defendant took a statement from this witness prior to her testimony. Under the circumstances we do not feel that the court abused its discretion in allowing the indorsement of witnesses and refusing the request for continuance, except on the conditions set forth.

On 2 occasions during the direct examination of a prosecution witness, both counsel for defendant made certain objections almost simultaneously. The judge directed that one counsel only make objections. On a third occasion during redirect examination of a prosecution witness, both counsel again voiced almost simultaneous objections after only 1 of them had been voicing the objections during the direct examination of this same witness. The court again directed that only 1 counsel make objections. These rulings are cited as error. Court Rule No 37, § 3 (1945), provides, in part:

"On the trial of the issues of fact, 1 counsel only on each side shall examine and cross-examine a witness, except by permission of the court in its discretion."

In *Baumier* v. *Antiau*, 65 Mich 31, the Court held it error to have required that a co-counsel who was examining a witness in chief should make objections upon that same witness' cross-examination. The court's decision was based upon a defendant's right to retain 2 counsel and to have both of them able.

to assist him, but on a division of labor basis. In the instant case counsel were not dividing the work but were both doing the same thing. In the *Baumier Case, supra,* the Court stated (p 39):

"The court, in his discretion, would have had the undoubted right to limit the argument upon these questions to 1 counsel upon a side."

We do not think the ruling made by the court below was an abuse of discretion lodged in him in such matters.

The sister of defendant's wife testified that in May, 1952, she, together with Mr. Pesch, went to defendant's apartment in Kalamazoo to take the latter's wife home to Muskegon. She testified that defendant, brandishing a knife, tried to prevent his wife's exit and threatened her. This was corroborated by Mr. Pesch who also corroborated the sister's further statement that defendant attempted to follow them to Muskegon. Defendant denied having a knife, denied that he attempted to follow them, and said he was pushed onto the couch by the sister. A young man testified that in August, 1951, defendant tried to ram his own house trailer with his car as well as run down his wife. Defendant denied this. An officer of the Muskegon police testified that in December of 1951 defendant was brought into the police department on charges of assault and battery upon his wife. It was specifically alleged that he bit off part of her nose. Defendant claimed he acted in self-defense. The prosecutor asked a sister of the deceased to identify a photograph apparently taken of the deceased when in a bloody condition immediately following this assault. The picture was not introduced into evidence and not shown to the jury. It was identified by the police officer who ordered it taken. The case against defendant for assault, though never dismissed, apparently has

never· proceeded to trial and its disposition· is unknown. Defendant claims error in both the introduction of the prior incidents concerning himself and his wife, and the use made of the picture.

The statute, CL 1948, § 768.27 (Stat Ann 1954 Rev § 28.1050), provides:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's· scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior·or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

The main defense offered was that the occurrence was accidental. There was little question as to how it occurred but the basic issue became the existence or absence of felonious intent. Under somewhat analogous circumstances we have sanctioned the use of evidence of prior like acts to show intent. *People v. Wright,* 315 Mich 81. See 2 Wigmore, Evidence (3d ed 1940), § 363. In the *Wright Case,* we said (p 90):

"That it is competent in proving intent to take testimony disclosing other like offenses committed by the accused has long been the law in this State."

See, also, *People v. Crawford,* 218 Mich 125; *People v. Seaman,* 107 Mich 348 (61 Am St Rep 320); *People v. Bommarito,* 309 Mich 139; *People v. Burke,* 157 Mich 108 (where the court, in effect, said that such evidence has been admitted in cases where accident might be inferred). We hold that prior alleged assaults and the intent therein involved bear

sufficient resemblance to the crime charged to be relevant and admissible to show defendant's intent.

While we are in agreement with defense counsel that such acts if admitted may bear on intent only if the jury is first convinced that they had been perpetrated by the accused, we are of the opinion that the charge made this point sufficiently clear. The court charged that proof of previous difficulties may be considered as bearing upon intent and motive. He admonished the jury that they were the sole judges of the credibility of the various witnesses. Inasmuch as defendant categorically denied all of the previous acts, it was sufficiently clear that they must disbelieve him and believe the other witnesses before considering those acts as bearing on his intent. The court further said that such acts "may be *proved* and may be considered." We think the defendant was adequately protected and no reversible error committed in this regard.

Defendant also objected to the use of the above-mentioned photograph without formal admission into evidence, and, in fact objected to its admission into evidence at all. As pointed out, it was not introduced though shown to 1 witness producing a momentary emotional reaction. Evidence of the assault was admissible. The witnesses shown the photograph both testified as to the bloody condition of the deceased following the alleged assault. The picture would add little to what was factually stated in oral testimony. Counsel objected to the use of the picture and it was withdrawn. While questionable procedure on the part of the prosecution, we do not feel that the incident amounted to reversible error under the circumstances.

The sister who testified as to prior conduct of the accused was asked by way of impeachment on cross-examination, "You were going with Mr. Pesch before he was divorced, weren't you witness?" The

court sustained an objection to this question as well as to the further question, "You were the woman who caused Mr. Pesch's marriage to break up, weren't you witness?" The court also upheld an objection made after the following exchange:

"*Q.* And you got fired from that job because you were chasing around with men?
"*A.* No, that's not so."

Defendant cites these rulings sustaining the objections as error and an infringement upon his right to impeach a witness upon cross-examination. It is permissible within the discretion of the court to discredit a witness upon cross-examination by showing a lack of morality. See *People* v. *Cutler,* 197 Mich 6; *People* v. *Keller,* 227 Mich 520. While this Court has reversed because of a failure to allow questions by way of impeachment, *People* v. *Turney,* 124 Mich 542, we have said in regard to this issue:

"The extent to which such examination should be permitted is a matter of discretion with the trial judge, with which this Court will not interfere, unless there is clear abuse of such discretion." *Iamurri* v. *Saginaw City Gas Co.,* 148 Mich 27, 30.

The sister testified to but 1 of the prior incidents between defendant and his wife. We do not think the rulings constituted a clear abuse of discretion and the error, if any, was such as not to be reversible under the circumstances.

Defendant's defense was that the occurrence was accidental. He stated that his wife "cramped" the wheel when the car was near the curb and then she got out of the car. Nowhere does there appear an explanation of the term "cramped." It could mean that the deceased turned the wheels of the car so that they pointed toward or were up against the curb thus preventing defendant from moving the

car until she got out. It could also mean that the wheel had some sort of defect which allowed it to be "cramped" in one position. In view of the latter the prosecution offered the testimony of some 4 police officers all of whom tested the brakes and steering mechanism of the automobile either that same night or the following day. All testified that they found it in good working order. In addition 1 of the officers conducted tests with the car to determine its steering radius at certain speeds though he did not attempt to simulate the occurrence by tests conducted in conjunction with the skid marks found and measured at the scene. It further appeared that the wheel of the car would automatically straighten itself without manual assistance upon rounding a corner. Defendant contends the admission of the foregoing was error on the ground that the mechanical condition of the car was not at issue and that the testimony in regard to skid marks was an invasion of the province of the jury.

The purpose of the testimony was to rebut the inference raised by defendant's story that the wheel was "cramped." The fact that the defendant did not "mention" any mechanical defect in the car to any officer does not mean that the condition of the vehicle was not at issue. The drawing made by an officer, showing the skid marks, the immediate area of the scene and pertinent distances, was introduced without objection. The testimony was in the main a recapitulation of facts appearing and deducible from the diagram itself. The invasion of the province of the jury was at best slight and of such a nature as not to have prejudiced the defendant. Defendant complains that no effort was made on the part of the police to simulate the accident in all respects and therefore the experiments conducted were inadmissible. For the most part the experiments, aside from those concerned with the steering

and brake mechanism, involved an ascertainment of turning radii. While not highly probative, they were relevant in view of the admission of the diagram and distances thereon. The ruling of the court did not constitute an abuse of the discretion vested in him regarding the admission of evidence of experiments. *Clark* v. *Lawrence Baking Co.*, 240 Mich 352; *Smith* v. *Grange Mutual Fire Insurance Co. of Michigan,* 234 Mich 119; *People* v. *Auerbach,* 176 Mich 23 (Ann Cas 1915B, 557).

During the cross-examination of the defendant the prosecutor asked the same question a number of times receiving an unsatisfactory or unresponsive answer. Defendant said that he thought the prosecutor was confusing him. The court then stated, "I don't think counsel is trying to confuse you at all." The court then re-asked the question and a responsive answer was given. In answer to a further question defendant made essentially contradictory statements and said again that the prosecutor confused him. The court again stated that it did not think the prosecutor was so doing and asked that he try to answer the questions. Defendant cites the statements of the court as error saying that the judge thereby usurped the function of the jury regarding credibility because by his statement he indicated that defendant was not telling the truth when he said he was confused. Whether or not the witness was confused at those particular questions was of small moment. It is true that the honesty and truthfulness of a witness is for the determination of the jury and a direct comment thereon by the judge has been held error. See *People* v. *Lewis,* 264 Mich 83. However, to tell a witness that he is not or should not be confused by the questions asked him, especially in light of subsequent responsive answers, is not a comment upon his truthfulness or honesty but is merely an effort

to obtain responsive answers to fair questions. Defendant's objection has no merit in this regard.

Counsel attempted to introduce the results of a lie-detector test performed upon defendant. The court sustained an objection to its admission but allowed counsel to make an offer of proof for purposes of the record. Defendant introduced as a witness Dr. LeMoyne Snyder of Lansing, Michigan. He is a lawyer, as well as a doctor, and is internationally known as a scientist particularly versed in criminal investigation including the use of a lie detector or polygraph. His qualifications are of the highest. He is a member of the various local and national bars and medical associations, the International College of Surgeons, Michigan Chiefs of Police, International Chiefs of Police and the International Society for the Detection of Deception. He stated that it was a consensus of opinion in the medical profession that there is a definite relationship between willful lying and an elevation of blood pressure, fluctuations and the depth of respiration and variations in the resistance to electric current; that such relationship could be ascertained by means of a polygraph which simultaneously records these reactions on paper. He testified that the machine never specifically says that a person is lying but is an aid to the investigator, who requires much experience, absolute integrity, general knowledge of business and police methods, and whose general qualifications must be very high. He frankly admitted that the machine in the most capable hands does not always indicate presence or absence of deception; that about 10% of the people, for mental and medical reasons, are not proper subjects, and that an operator could err in his interpretations. He stated that the use of the polygraph was an accepted scientific procedure used by the police, the United States army, navy, air force and the atomic

energy commission. He stated that it was more accurate than many types of admissible evidence; that, while it was not infallible, it was more accurate than eye witnesses. He stated that fingerprint and ballistic witnesses are often mistaken, and further, that many judges use it in pre-sentence investigations. Alex L. Gregory of the Detroit police department, experienced during the past 10 years in the use of the polygraph, was also sworn as a witness but he was not permitted to state whether he had examined defendant or not.

In *People* v. *Becker,* 300 Mich 562, 566 (139 ALR 1171), we held it was not error for the trial court to have refused to admit the results of a polygraph test, in the following words:

"There was no testimony offered which would indicate that there is at this time a general scientific recognition of such tests. Until it is established that reasonable certainty follows from such tests, it would be error to admit in evidence the result thereof."

We have followed this pronouncement without further comment. *People* v. *Welke,* 342 Mich 164; *Stone* v. *Earp,* 331 Mich 606 (civil case). Defendant did offer testimony concerning the test and we must here decide whether this testimony considered in light of other authority establishes a foundation sufficient for admission.

A careful and thorough review of the testimony and the authorities diligently assembled by counsel for defendant compels the conclusion that the results of such tests have not, as yet, reached the stature of evidence admissible in a court of law. Attention is called to possibly the foremost authority on the subject, Professor Fred Inbau, who, with an associate, has written a book entitled "Lie Detection and Criminal Interrogation" (3d ed 1953). In this, the latest edition of this book, the authors essentially

reiterated conclusions which they expressed in an earlier edition of the same work. We quote from the book as follows:

"Until the previously estimated accuracy is generally attainable, and a much higher degree of standardization achieved, the courts should continue to withhold judicial sanction of the lie-detector test results. (p 128)  *  *  *

"The present lie-detector technique is not adequately standardized as to instrumentation or the manner in which the tests should be conducted, or the interpretation of the recordings. (p 129)  *  *  *

"It must be reported, therefore, that at the present time the technique is not an 'accepted' one among the scientists whose approval is a prerequisite to judicial recognition." (p 130)

For other current articles of interest, see Levitt, Scientific Evaluation of the "Lie Detector," 40 Iowa L Rev 440 (1955); Wicker, The Polygraphic Truth Test and the Law of Evidence, 22 Tenn L Rev 711 (1953); and articles following at pp 728, 743 and 766. While in most cases no offer of proof was made or allowed the authorities are virtually unanimous in their rejection of the tests as evidence. See cases collected in Inbau, *supra;* Wicker, *supra;* 3 Wigmore, Evidence (3d ed, 1940), § 999; 34 ALR 145; 86 ALR 611; 119 ALR 1198; 139 ALR 1171; 23 ALR2d 1292.

This is not to belittle or detract from the proven value of the polygraph in the fields of crime detection and criminal interrogation. The testimony of Dr. Snyder shows that it is of the greatest value and is quite generally used with very good results. It seems, however, that it has not as yet reached the dignity of positive evidence. There is still a percentage of error in the results, estimated at being from less than 10% to 25% by various authorities. If used as to one witness it might be

claimed that it should be used as to others and the question in the case might become whether the result of the lie detector, as opposed to positive testimony, should be accepted. The value of the results depend to a large degree upon the training and expertness of the examiner and criterion for interpretation has not as yet become standardized. Then too, there are certain persons having some physiological or psychological abnormalities who would not react as would a normal person to the test. If we were to admit the results of the tests into evidence prematurely and before its general reliability and acceptability have been proven, the value of the test on a particular person could easily become the question in the trial rather than that person's guilt or credibility. The tremendous weight which such tests would necessarily carry in the minds of a jury requires us to be most careful regarding their admission into evidence and we should not do so before its accuracy and general scientific acceptance and standardization are clearly shown. The foundation laid in this case, while noteworthy and valuable, is not, in our opinion, sufficient to answer and overcome the various questions necessarily raised before the results can be considered evidence admissible in a court of law. We, therefore, must hold that failure to admit the results of the test did not constitute error.

Other errors are claimed but we find them not of sufficient merit or serious enough to warrant discussion.

The judgment of conviction is affirmed.

CARR, C. J., and SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.