KLUCK v BORLAND

Docket No. 93653. Submitted May 7, 1987, at Lansing. Decided
    September 8, 1987.

Karen Kluck brought an action against Tamara Borland in the
    Oakland Circuit Court for damages for injuries sustained in an
    automobile accident. At trial, plaintiff presented the testimony
    of Dr. Gunabalan, Dr. Leroy, and Dr. Wexler to the effect that
    thermography was a scientifically sound diagnostic tool having
    general scientific acceptance. Each of plaintiff's experts devoted
    at least ten to fifteen percent of his practice to thermogram
    technology. The court, Francis K. O'Brien, J., concluded that
    thermographic evidence was sufficiently accepted by disinter-
    ested experts to be admissible. A judgment was later entered
    for plaintiff and defendant appealed.

The Court of Appeals *held:*

Testimony by expert witnesses regarding a novel form of
    scientific evidence may be admitted so long as it is established
    that the evidence has achieved general scientific acceptance
    among impartial and disinterested experts in its field. General
    scientific recognition of a new technique may not be established
    without the testimony of disinterested and impartial experts
    whose livelihood is not intimately connected with the new
    technique. Under the facts, the trial court abused its discretion
    in ruling that the reliability of thermography had been estab-
    lished by impartial and disinterested witnesses.

Reversed and remanded.

1. EVIDENCE — EXPERT WITNESSES — SCIENTIFIC EVIDENCE.

    Testimony by expert witnesses regarding a novel form of scien-
    tific evidence may be admitted so long as it is established that
    the evidence has achieved general scientific acceptance among
    impartial and disinterested experts in its field.

2. EVIDENCE — SCIENTIFIC EVIDENCE — EXPERT WITNESSES.

    General scientific recognition of a new technique may not be

REFERENCES
Am Jur 2d, Expert and Opinion Evidence §§ 103 *et seq.*
Use of medical or other scientific treatises in cross-examination of
    expert witnesses. 60 ALR2d 77.

established without the testimony of disinterested and impartial experts whose livelihood is not intimately connected with the new technique.

*Condit, McGarry & Schloff, P.C.* (by *Alexander B. McGarry* and *Thomas J. Trenta*), for defendant.

Before: WEAVER, P.J., and M. J. KELLY and J. R. KIRWAN,* JJ.

M. J. KELLY, J. The sole issue raised in this appeal is whether the trial court abused its discretion by ruling that thermographic evidence was admissible to prove serious impairment of a body function. Defendant contends that it was error to admit the evidence. We agree and reverse and remand.

Plaintiff's claim is based on personal injuries she suffered after the automobile in which she was a passenger failed to stop at a blinking red light and collided with another car. Defendant driver admitted negligence at trial.

As a result of the accident plaintiff sought medical treatment. Despite the fact that x-rays did not reveal any injury, Arthur Kaselemas, M.D., plaintiff's examining physician, determined that plaintiff had sustained a fairly severe injury to her neck. Subsequently, Ram Gunabalan, M.D., performed a thermographic study of plaintiff, which in Dr. Gunabalan's opinion indicated an irritation of the eighth cervical nerve.

Prior to trial an evidentiary hearing was conducted to determine the admissibility of the results of the thermography. The trial court ruled that thermographic evidence was sufficiently accepted by disinterested experts to justify its admission. At the conclusion of trial, the trial court held:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

> [B]ut for this thermographic test and evidence, the Court would have ruled that based upon current Michigan law today, and a review of medical evidence, the defendant [sic, plaintiff] did not meet the threshold to demonstrate serious impairment of a bodily function.

Based on the results of the thermography the lower court held that there was sufficient objective evidence and plaintiff had met her burden of proof.

"The admissibility of scientific evidence in this state is governed by the so-called *Davis-Frye* rule." *People v Young,* 418 Mich 1, 17; 340 NW2d 805 (1983).

That rule as it now stands is a culmination of the reasoning in *Frye v United States,* 54 US App DC 46, 47; 293 F 1013 (1923); *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), and *People v Barbara,* 400 Mich 352; 255 NW2d 171 (1977). The rule is that expert testimony concerning a novel form of scientific evidence may be admitted so long as it is established that the evidence has achieved general scientific acceptance among impartial and disinterested experts in the field. The party offering the evidence has the burden of demonstrating that it has been accepted as reliable by the scientific community. *People v Young, supra* at 20.

At trial in this matter, plaintiff submitted the depositions of three experts to establish that thermography has achieved general scientific acceptance. Dr. Gunabalan stated that it was his opinion, based on his knowledge that thermography was used on a regular basis at leading medical institutions, that thermography was recognized and accepted as reliable and thermograms should be used as a diagnostic tool.

The deposition of Pierre Leroy, M.D., was also introduced into evidence on behalf of plaintiff. Dr.

Leroy had written and lectured on the diagnosis and evaluation of pain through the use of thermography. Dr. Leroy likewise held the opinion that thermography was useful in the diagnosis and monitoring of pain in soft tissue injuries.

Plaintiff also introduced the deposition of Charles E. Wexler, M.D., a board-certified diagnostic radiologist as well as the secretary-treasurer of the American Academy of Thermology. It was Dr. Wexler's opinion that thermography was a scientifically sound diagnostic tool that provided unique information on sensory nerve damage otherwise unavailable.

Before determining whether the conclusions reached by plaintiff's experts established that thermography has achieved general scientific acceptance, it is first necessary to determine whether the experts are disinterested and impartial. *People v Young (After Remand)*, 425 Mich 470, 481; 391 NW2d 270 (1986). "The standard developed by this Court is whether the expert's 'livelihood was not intimately connected with the new technique.' " *People v Young (After Remand), supra* at 483, quoting *People v Tobey*, 401 Mich 141, 145; 257 NW2d 537 (1977).

In *Young (After Remand)*, the reliability of electrophoresis of evidentiary bloodstains was at issue. The Supreme Court held that the livelihoods of the police officer who did the electrophoresis analysis, and the director of the FBI's serology laboratory, were too intimately connected with the new technique to make their testimony impartial. *Young (After Remand), supra* at 484.

In *Tobey*, the prosecutor was attempting to establish the admissibility of voice print evidence through the testimony of two experts, Dr. Oscar Tosi (a scientist), and Lt. Ernest Nash (a police officer). The Supreme Court held:

Neither Nash nor Tosi, whose reputations and careers have been built on their voice-print work, can be said to be impartial or disinterested. [*People v Tobey, supra* at 146.]

Similarly in *People v Barbara, supra,* where polygraph operators, polygraph teachers and others, whose business was the use and operation of polygraphs, testified to the scientific reliability of a polygraph test, the Supreme Court held that the witnesses were not disinterested scientists. 400 Mich 376.

The trial court in the instant case, in reaching its decision that the use of thermography was a scientifically accepted diagnostic tool, relied principally on the testimony of Dr. Wexler. However, it is clear from the deposition of Dr. Wexler that he is intimately involved in the elevation of thermography as a diagnostic technique and that he enjoyed a substantial income from the advancement of thermogram technology. Likewise, Dr. Gunabalan, and Dr. Leroy to a lesser extent, had economic interests in the advancement of thermogram technology. Dr. Gunabalan's deposition established that he owned twenty-five percent of Thermographic Medical Evaluation Centers of Michigan, Inc., and that twenty percent of his practice dealt with thermogram technology. In the case of Dr. Leroy, his deposition established that since 1980 he has been a board member of the American Thermographic Society, that after many years of work he has developed a program using thermogram technology at the Delaware Pain Clinic and Thermography Laboratory, and that ten to fifteen percent of his practice involves thermogram technology.

In light of these facts, the trial court abused its discretion when it ruled that the reliability of

thermography had been established by impartial and disinterested experts. The holding of the trial court is reversed. This case is remanded for determination by the trial court of whether plaintiff met her burden of proof in light of the Supreme Court's decision in *DiFranco v Pickard,* 427 Mich 32; 398 NW2d 896 (1987).

Reversed and remanded.