MILLER v STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY

Docket No. 87700. Submitted June 2, 1987, at Grand Rapids. Decided
April 25, 1988. Leave to appeal applied for.

Todd A. Miller was injured in an accident involving an automobile owned by Balder, Balder & Koeman Grain Company and driven by Arlyn Jay Schreur, an employee of Balder. Miller brought an action in Allegan Circuit Court against State Farm Mutual Automobile Insurance Company, Schreur and Balder. At the beginning of a trial by jury, defendants made a motion in limine to exclude evidence of thermographic tests done on plaintiff on the ground that plaintiff had not established a foundation that such tests had achieved general scientific acceptance and recognition within the medical community as a reliable diagnostic tool. The trial court, Hudson E. Deming, J., took the motion under advisement, but later admitted the deposition testimony of Donald L. Newman, M.D., regarding thermography. The court also admitted into evidence the results of a thermographic examination of plaintiff conducted by Dr. Newman. The jury returned a verdict in favor of plaintiff, awarding him $54,000. Defendants Schreur and Balder appealed.

The Court of Appeals held:

1. Testimony by expert witnesses regarding a novel form of scientific evidence may be admitted so long as it is established that the evidence has achieved general scientific acceptance among impartial and disinterested experts in its field. In this case, the trial court erred by failing to conduct a hearing on the reliability of thermographic evidence.

2. On remand, the trial court is to conduct a hearing to determine whether thermography is accepted as reliable by the scientific community. The number of expert witnesses each side may call shall rest in the sound discretion of the trial court

REFERENCES

Am Jur 2d, Evidence § 829; Expert and Opinion Evidence § 103 *et seq.*

Thermographic tests: admissability of test results in personal injury suits. 56 ALR4th 1105.

except that Dr. Newman may not testify as an expert, on account of his bias, and other testimony shall be limited to that of experts who are disinterested and impartial and whose livelihood is not intimately connected with thermography.

3. If the trial court determines that thermography is accepted as reliable by the scientific community, the verdict in favor of plaintiff is affirmed. If the trial court finds that it is not, the verdict is reversed and a hearing shall be conducted on whether plaintiff has otherwise satisfied the requirements of *DiFranco v Pickard,* 427 Mich 32 (1986).

Remanded.

BEASLEY, P.J., dissented and would hold that thermography, as presently developed in the medical field, is a useless and unreliable technique and that, barring new developments, the results of thermographic medical examinations should not be admitted into evidence. Judge BEASLEY would reverse and remand for a hearing to determine whether plaintiff met his burden of proof under *DiFranco.*

1. EVIDENCE — EXPERT WITNESSES — SCIENTIFIC EVIDENCE.

Testimony by expert witnesses regarding a novel form of scientific evidence may be admitted so long as it is established that the evidence has achieved general scientific acceptance among impartial and disinterested experts in its field.

2. EVIDENCE — SCIENTIFIC EVIDENCE — EXPERT WITNESSES.

General scientific recognition of a new technique may not be established without the testimony of disinterested and impartial experts whose livelihood is not intimately connected with the new technique.

*John A. Watts, P.C.* (by *John A. Watts*), for plaintiff.

*Honigman, Miller, Schwartz & Cohn* (by *Frederick M. Baker, Jr.*), for Arlyn Jay Schreur and Balder, Balder & Koeman Grain Company.

Before: BEASLEY, P.J., and R. M. MAHER and M. E. DODGE,* JJ.

R. M. MAHER, J. We agree with the facts and disqualification of plaintiff's expert witness as ex-

* Circuit judge, sitting on the Court of Appeals by assignment.

plained in Judge BEASLEY's well-reasoned opinion, which was originally circulated as a proposed majority opinion, but must disagree as to that portion of his final paragraph where he finds "thermography, as presently developed in the medical field, to be a useless and unreliable technique." We believe that, under the present record, that conclusion is premature and one which should be reserved until after the competing views are fully set forth in a *Davis-Frye*[1]-type hearing.

As Judge BEASLEY recognizes, the trial court erred in failing to address defendants' motion in limine by conducting a hearing on the reliability of thermographic evidence. We do not believe, though, that plaintiff should be penalized by the trial court's mistake or by our ruling on appeal that Dr. Newman should have been disqualified from giving expert testimony. Had the court conducted a *Davis-Frye* hearing, and had plaintiff known that his witness was unable to testify on the scientific acceptance of thermography, he may have been able to present expert testimony from a competent witness. Plaintiff should not be made to suffer for his lack of foreknowledge.

For the above reasons, we believe the case should be remanded for a *Davis-Frye*-type hearing. The number of expert witnesses each side may call shall rest in the sound discretion of the trial court and shall be limited according to the dictates of the case.[2] At the conclusion of the hearing, the

---

[1] *Frye v United States,* 54 US App DC 46; 293 F 1013 (1923); *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955).

[2] On remand, the trial judge is cautioned to find plaintiff's expert witnesses competent to testify only if those persons satisfy the requirements of *Kluck v Borland,* 162 Mich App 695; 413 NW2d 90 (1987), as discussed in Judge BEASLEY's dissenting opinion. Although this may limit plaintiff's ability to obtain competent witnesses, we do not believe this would work an undue hardship on him. If the only persons willing to testify as to the reliability of thermography are

trial court shall decide, based upon the facts before it, whether thermography is accepted as reliable by the scientific community. If the court finds that it is, the verdict in favor of plaintiff is affirmed. If the court finds that it is not, the verdict is reversed and a hearing shall be conducted on whether plaintiff has otherwise satisfied the requirements of *DiFranco v Pickard*.[3]

Remanded for a *Davis-Frye*-type hearing.

M. E. DODGE, J., concurred.

BEASLEY, P.J. *(dissenting)*. I respectfully dissent. Since the majority has referred to the opinion I originally circulated as a proposed majority opinion, I file it in substantially that form, but as a dissent.

Defendants-appellants, Arlyn Jay Schreur and Balder, Balder & Koeman Grain Company, appeal from an August 9, 1985, verdict of $54,000 entered for plaintiff, Todd A. Miller. This case arose from a September 21, 1982, automobile accident in which plaintiff claimed to have suffered serious impairment of bodily function. Defendant Schreur collided with plaintiff's automobile. Defendant Balder, Balder & Koeman Grain Company employed defendant Schreur.

Jury trial commenced July 22, 1985. At the beginning of trial, defendants moved in limine to exclude thermographic tests on the ground that plaintiff did not establish a foundation that such tests had achieved general scientific acceptance and recognition within the medical community as a reliable diagnostic tool. The trial court took the

---

those with a substantial financial interest in its practice, surely that field of medicine cannot claim to be widely accepted as reliable by the scientific community.

[3] 427 Mich 32; 398 NW2d 896 (1986).

motion under advisement and later admitted the deposition testimony of Donald L. Newman, M.D., including the thermograms.

Dr. Newman testified that for the past three to four years he has performed thermograms at the Detroit Institute of Physical Medicine and Rehabilitation. Shareholders in the institute included himself, his brother, Dr. Steven Newman, and his father, Dr. Max Newman. Dr. Donald Newman testified that he is a clinical associate in family practice at Wayne State University, teaching disability and pain evaluation. Dr. Newman has written several papers on thermography and frequently speaks on the forensic use of thermography. He says that over the past 2½ years he has performed between six hundred and eight hundred thermograms. He testified that thermography measures the heat radiating from the subject's body surface. The temperature readings are converted electronically into a multi-color television picture of the body, with different colors representing different temperatures. Dr. Newman testified that, in his opinion, there is a scientific basis for thermography and what the skin temperature shows in terms of the underlying processes of the body.

Dr. Newman charges $325 for a thermogram. He also gives two or three depositions per week. He charges $250 for the first hour of a deposition, plus $195 for the second hour.

At the request of his brother, Dr. Steven Newman, Dr. Donald Newman performed a thermographic examination of plaintiff. He took Polaroid photographs of the color television screens showing plaintiff's thermographic "map." The photographs showed "hot spots" which, according to Dr. Newman's testimony, corresponded to areas where plaintiff had complained of pain. The trial court admitted the photographs into evidence.

On appeal, defendants claim the trial court committed error requiring reversal when it admitted the thermographic evidence. Plaintiff argues that defendants failed to timely file their motion and, therefore, appellate review of the issue should be denied. Plaintiff cites MCR 2.119(C)(1), which states that a written motion must be served at least seven days before the time set for the hearing. Defendants argue that they filed the motion as quickly as possible and that plaintiff caused any delay.

Defendants required the testimony of Dr. Donald Newman in order to prepare their motion to exclude. Plaintiff did not designate Dr. Newman as an expert witness until June 28, 1985. The deposition did not occur until July 11, 1985. Because plaintiff reserved the right to have Dr. Newman review and correct the deposition transcript, defendants did not receive the transcript until July 17, 1985. Defendants filed their motion July 19, 1985. Under these circumstances, defendants acted with reasonable promptness. Consequently, the issue can be addressed on its merits.

In *Kluck v Borland*,[1] this Court held that a trial court abused its discretion when it ruled that the reliability of thermography had been established by impartial and disinterested experts. In *Kluck*, the Court relied on the rule regarding the admissibility of scientific evidence as developed in *Frye v United States*,[2] *People v Davis*,[3] *People v Barbara*,[4] and *People v Young*:[5]

---

[1] 162 Mich App 695; 413 NW2d 90 (1987).

[2] 54 US App DC 46; 293 F 1013 (1923).

[3] 343 Mich 348; 72 NW2d 269 (1955).

[4] 400 Mich 352; 255 NW2d 171 (1977).

[5] 418 Mich 1; 340 NW2d 805 (1983), after remand 425 Mich 470; 391 NW2d 270 (1986).

The rule is that expert testimony concerning a novel form of scientific evidence may be admitted so long as it is established that the evidence has achieved general scientific acceptance among impartial and disinterested experts in the field. The party offering the evidence has the burden of demonstrating that it has been accepted as reliable by the scientific community. *People v Young,* *supra* at 20.[6]

The trial court erred when it failed to respond to defendants' motion in limine regarding thermography before trial. The testimony of Drs. Newman and Potchen does not merely go to the weight of the evidence. The purpose of the *Davis-Frye* rule is to prevent the jury from considering novel scientific evidence that has not been determined first by a court to be accepted as reliable by the scientific community. The court cannot forsake this duty. A *Davis-Frye* hearing insures that a jury will not hear unreliable evidence. Had the trial court exercised its discretion as required, it would have excluded the thermographic evidence. Absent a foundation to establish that thermography had achieved general scientific acceptance among impartial and disinterested experts, allowing a jury to see the colorful photographic results of the thermographic examination constituted error requiring reversal.

In *Kluck,* the plaintiff presented the deposition testimony of Ram Gunabalan, M.D., Pierre Leroy, M.D., and Charles E. Wexler, M.D., to establish that thermography had achieved general scientific acceptance. The trial court admitted the thermographic evidence, relying principally on the testimony of Dr. Wexler, a board-certified diagnostic radiologist and secretary/treasurer of the American Academy of Thermology. This Court reversed,

---

6 *Kluck, supra* at 697.

holding that none of the doctors was an impartial
and disinterested witness:

> [I]t is clear from the deposition of Dr. Wexler
> that he is intimately involved in the elevation of
> thermography as a diagnostic technique and that
> he enjoyed a substantial income from the advance-
> ment of thermogram technology. Likewise, Dr.
> Gunabalan, and Dr. Leroy to a lesser extent, had
> economic interests in the advancement of thermo-
> gram technology. Dr. Gunabalan's deposition es-
> tablished that he owned twenty-five percent of
> Thermographic Medical Evaluation Centers of
> Michigan, Inc., and that twenty percent of his
> practice dealt with thermogram technology. In the
> case of Dr. Leroy, his deposition established that
> since 1980 he has been a board member of the
> American Thermographic Society, that after many
> years of work he has developed a program using
> thermogram technology at the Delaware Pain
> Clinic and Thermography Laboratory, and that ten
> to fifteen percent of his practice involves thermo-
> gram technology.[7]

I would elect to follow *Kluck* and hold the
thermographic evidence inadmissible. The within
testimony presents a more compelling case for
reversal than *Kluck.* Dr. Newman frequently
speaks on the uses of thermography. Assuming the
$325 fee he charged plaintiff to be a standard rate,
Dr. Newman has billed between $195,000 and
$260,000 for thermographic examinations in the
last three years. He earns a substantial income
giving depositions regarding the results of thermo-
graphic examinations.

Even if Dr. Newman's bias was ignored, plaintiff
did not establish the medical or scientific commu-
nity's acceptance of thermography as reliable. Be-
sides Dr. Newman's testimony, the trial court also

---

[7] *Kluck, supra* at 699.

heard the testimony of E. James Potchen, M.D., chairman of the board of radiology at Michigan State University and former faculty member at Harvard Medical School and Johns Hopkins University. He testified that thermograms do not give reproducible results. Dr. Potchen testified that, to his knowledge, no reputable physician would think of using thermography in the diagnosis or management of his patients. He testified that no medical school teaches thermography as a curricular subject. He also testified that physicians use thermography only as evidence in litigation, not for patient care.

I would find thermography, as presently developed in the medical field, to be a useless and unreliable technique. Barring new developments in this field, the results of thermographic medical examinations should not be admitted into evidence. I would reverse the court below and remand for a hearing to determine whether plaintiff met his burden of proof under the Supreme Court decision in *DiFranco v Pickard*.[8]

---

[8] 427 Mich 32; 398 NW2d 896 (1986).